**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **LARRY A. MCMILLAN** | ) | |
| **301 Overview Drive** | ) | |
| **Abingdon, Maryland 21009** | ) | |
| | ) | **Complaint for a Civil Case** |
| **Individually and On Behalf Of All Others** | ) | |
| **Similarly Situated,** | ) | **Civil Action No.:** |
| | ) | |
| **Plaintiff,** | ) | **JURY TRIAL DEMANDED** |
| **vs.** | ) | |
| | ) | |
| **KANSAS CITY LIFE INSURANCE** | ) | |
| **COMPANY,** | ) | |
| **3520 Broadway** | ) | |
| **Kansas City, Missouri 64111** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Larry A. McMillan ("Plaintiff"), individually and on behalf of all others similarly situated, for his First Amended Class Action Complaint against Defendant Kansas City Life Insurance Company ("Defendant"), states and alleges as follows:

## NATURE OF ACTION

1. This is a class action for breach of contract and conversion to recover amounts that Defendant charged Plaintiff and the proposed class in excess of amounts authorized by the express terms of their life insurance policies. Plaintiff's claims are supported by the written provisions of his policy, which are materially the same as those of other policies held by the members of the proposed class.

2. The terms of Plaintiff's life insurance policy provide for an "accumulated value" consisting of monies held in trust by Defendant for Plaintiff, and Defendant is contractually bound to deduct from the accumulated value only those charges that are explicitly identified and authorized by the policy's terms.

3. Despite unambiguous language in the policy, which is a fully integrated insurance agreement, Defendant breaches the policy by deducting charges from Plaintiff's accumulated value in excess of the amounts specifically permitted by the policy. Defendant has breached the policy repeatedly and continues to do so.

4. Defendant has caused material harm to Plaintiff and the proposed class by improperly draining monies they have in the accumulated values of their policies. Every unauthorized dollar taken from policy owners is one less dollar that can be used to: earn interest; pay future premiums; increase the death benefit; use as collateral for policy loans; or withdraw as cash.

5. Plaintiff brings this case as a class action under Federal Rule of Civil Procedure 23, on behalf of himself and a class of similarly situated persons who own or owned certain universal and variable universal life insurance policies issued by Defendant in the State of Maryland:

> All persons who own or owned a Better Life Plan, Better Life Plan Qualified, LifeTrack, AGP, MGP, PGP, Chapter One, Classic, Rightrack (89), Performer (88), Performer (91), Prime Performer, Competitor (88), Competitor (91), Executive (88), Executive (91), Protector 50, LewerMax, Ultra 20 (93), Competitor II, Executive II, Performer II, Ultra 20 (96), Century II VUL, Alliance VUL, or Accumulator VUL life insurance policy issued in Maryland, that was issued or administered by Defendant, or its predecessors in interest.[1]

6. This is not the first class-action lawsuit filed against Defendant on the policy forms at issue. A class of Kansas owners of the same universal life insurance policies was recently certified in *Meek v. Kansas City Life Ins. Co.*, 19-00462-CV-W-BP (W.D. Mo.). Likewise, a class of Missouri owners of the same universal life insurance policies was certified in *Karr v. Kansas City Life Ins. Co.*, 1916-CV26645 (Circuit Court of Jackson County, Mo.). A class-action complaint on behalf of California owners was also recently filed in *Fine v. Kansas City Life Ins. Co.*, 2:22-CV-02071 (C.D. Cal.). Finally, a class of Missouri owners of the same variable universal life insurance policies was certified in *Sheldon v. Kansas City Life Ins. Co.*, 1916-CV26689 (Circuit Court of Jackson County, Mo.).

7. Plaintiff seeks to recover compensatory and punitive damages, as well as declaratory and injunctive relief on behalf of himself and on behalf of the class of Maryland policy owners.

---

[1] Excluded from the class is Defendant, any entity in which Defendant has a controlling interest, any of the officers, directors, employees, or sales agents of the Defendant, the legal representatives, heirs, successors, and assigns of the Defendant, anyone employed with Plaintiff's counsels' firms, any Judge to whom this case is assigned, and his or her immediate family.

## PARTIES

8. Plaintiff Larry A. McMillan is an individual residing in the State of Maryland and is a citizen of the State of Maryland.

9. Defendant Kansas City Life Insurance Company is a corporation incorporated under the laws of the State of Missouri, with its principal place of business in Kansas City, Missouri.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. § 1332(d) because this is a class action with diversity of citizenship between parties and the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and the proposed Class contains more than 100 members. Plaintiff's claims are meaningfully connected to Maryland because he purchased the policy at issue in Baltimore, Maryland, is a Maryland resident, and has lived and worked in Maryland while making premium payments on the policy since it was issued to him in 1993. Defendant purposefully directed its activities toward Maryland and Maryland residents and availed itself of the privilege of conducting business in Maryland by: obtaining approval from the Maryland Insurance Administration to conduct business in this state in 1925, perpetually maintaining the State of Maryland's authorization to transact insurance business in the state from the time of its registration through the present, and soliciting Maryland residents to purchase insurance policies.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant is a resident of this District and a substantial portion of the events giving rise to Plaintiff's causes of action occurred in this District in that, in 1993, Plaintiff was a resident of this District, visited Defendant's agent in this District, signed the application for life insurance in this District, made

the initial premium payments in this District, and established the contract with Defendant in this District.

## **FACTUAL BACKGROUND**

12. Plaintiff purchased from Defendant a "Flexible Premium Adjustable Death Benefit Life Policy" bearing policy number 2558330, with an issue date of June 25, 1993, and an initial specified amount of $50,000 (the "Policy"). A true and accurate copy of the Policy is attached hereto as Exhibit A, and incorporated herein by reference.

13. Plaintiff has always been both the "owner" and the "insured" under the Policy.

14. Defendant is the effective and liable insurer of the Policy, and policies meeting the class definition (the "Class Policies").

15. The entire contract between Plaintiff and Defendant consists of the Policy, the application, and any supplemental applications. Ex. A at p. 9.

16. The terms of the Policy are not subject to individual negotiation and are materially the same for all policy owners.

17. Only the President, Vice President, Secretary, or Assistant Secretary of Defendant has authority to change a provision of the Policy, and any such "approved change must be endorsed on or attached to" the Policy. Ex. A at p. 13.

18. Insurance agents do not have "authority to make any changes or waive any of the terms" of the Policy. Ex. A at p. 13; *see also* p. 6 of Plaintiff's application included in Ex. A ("No agent has the authority to waive any of the [Defendant]'s rights or rules, or to make or change any contract.").

19. Defendant has issued and administered, and currently administers, all aspects of the Policy and Class Policies, including collecting premiums, and determining, assessing, and deducting policy charges.

20. Plaintiff's Policy and the Class Policies are permanent life insurance, meaning their purpose is to provide insurance protection for the life of the insured.

21. In addition to a death benefit, the Policy and Class Policies provide policy owners an investment, savings, or interest-bearing component that accumulates value over time. Although the savings component in certain of the Class Policies may be identified by a different name, it is identified in the Policy and throughout this First Amended Complaint as the "accumulated value."

22. Generally, under universal and variable universal life policies like those owned by Plaintiff and class members, premiums are deposited into the accumulated value of the policy, and the insurer deducts certain amounts directly from premium payments and monthly deductions from the accumulated value as disclosed and authorized by the policy.

23. The funds held in the accumulated value are policy owner property that Defendant holds in trust for its policy owners.

24. The Policy and Class Policies expressly identify how the accumulated value is calculated:

> On each monthly anniversary day the accumulated value will be equal to:
>
> A + B + C - D – E
>
> On any day other than a monthly anniversary day, the accumulated value will be equal to:
>
> A + B + C – D
>
> "A" is the accumulated value on the preceding monthly anniversary day.
>
> "B" is the net premiums received since the preceding monthly anniversary day.

> "C" is interest on "A" from the preceding monthly anniversary day plus interest on each net premium in "B" from the date of receipt of each premium at [Defendant's] Home Office.
>
> "D" is all partial withdrawals since the preceding monthly anniversary day and a pro rate portion of one month's interest to the date of calculation.
>
> "E" is the monthly deduction, as described in Section 11.4, for the month beginning on that monthly anniversary day.

Ex. A. at p. 13.

25. The Policy expressly defines the specific charges that Defendant may assess and deduct from Plaintiff's premium payments and the Policy's accumulated value. Defendant may assess and deduct only those charges allowed by the Policy.

26. The Policy authorizes Defendant to deduct a "Premium Expense Charge" of 5.0% from each premium paid into the Policy before deposited into the accumulated value. Ex. A at p. 5.

27. The Policy authorizes Defendant to take from the accumulated value a "Monthly Deduction." The Monthly Deduction is:

> The monthly deduction for a policy month is equal to the cost of insurance, as described in Section 11.5, and the cost of any additional benefits provided by riders for the policy month plus the monthly expense charge.

Ex. A at p. 13.

28. The Policy authorizes Defendant to deduct a monthly expense charge in the guaranteed amount of $5.00 per month. Ex. A at p. 5.

29. The Policy defines its "Expense Charges" as follows:

> The amount [Defendant] deduct[s] to cover [Defendant's] expenses. The premium expense charge is the amount [Defendant] deduct[s] from each premium payment. The monthly expense charge is included in the monthly deduction. These charges are shown on page 5.

Ex. A at p. 8.

30. The premium expense charge and monthly expense charge are the only "expense charges" identified by the Policy.

31. In addition to setting the maximum amounts Defendant is authorized to deduct for expense charges, the Policy expressly identifies a separate cost of insurance charge deducted from the accumulated value each month.

32. The "Cost of Insurance" is defined in the Policy as:

> The charge [Defendant] make[s] for providing pure insurance protection using the current cost of insurance rates for this policy. It does not include the cost of any additional benefits provided by riders.

Ex. A at p. 8.

33. The Policy identifies how the cost of insurance is calculated:

> The cost of insurance on any monthly anniversary day is equal to:
>
> Q x (R - S)
>
> "Q" is the cost of insurance rate (as described in Section 4.)
>
> "R" is the Insured's death benefit on that day divided by no less than 1.0036748.
>
> "S" is the accumulated value, as described in Section 11.2, prior to subtracting the cost of insurance.

Ex. A at pp. 13-14.

34. The Policy discloses how the monthly cost of insurance rates ("Q" in the above paragraph) will be determined, including:

> The monthly cost of insurance rates used in calculating the cost of insurance on each monthly anniversary day are based on the Insured's age, sex and risk class.
>
> The cost of insurance rates used will be determined by [Defendant] based on [Defendant's] expectations as to future mortality experience. Any change in the current cost of insurance rates will be on a uniform basis for Insureds of the same age, sex and risk class whose policies have been in force the same length of time.

> The current cost of insurance rates will never be increased to recover losses incurred, or decreased to distribute gains realized by [Defendant] prior to the change.

Ex. A at p. 6.

35. Age, sex, and risk class are factors commonly understood in the context of a life insurance policy to determine the mortality expectations of an insured or group or class of insureds. Indeed, Defendant acknowledges that age, sex, and risk class are mortality factors.

36. Because the Policy specifically identifies age, sex, and risk class in the cost of insurance provisions, and expressly states that the cost of insurance rates used will be determined based on Defendant's expectations as to future mortality experience, the Policy does not authorize Defendant to consider non-mortality factors in setting monthly cost of insurance rates.

37. Like the Policy, the Class Policies disclose similar periodic deductions that Defendant is authorized to take from policy owners' accumulated values, including specifically, cost of insurance charges that are calculated using rates that Defendant promises will be determined based on its expectations as to future mortality experience and separate, monthly expense charges.

38. Although the Policy and Class Policies authorize Defendant to determine cost of insurance rates based on its "expectations as to future mortality experience," Defendant does not determine cost of insurance rates based on its "expectations as to future mortality experience." Defendant considers and uses other unlisted, non-mortality factors to determine cost of insurance rates, including without limitation, expenses.

39. By failing to determine cost of insurance rates based on its "expectations as to future mortality experience" and by taking non-mortality factors into account in determining cost

of insurance rates, Defendant knowingly causes those rates to be higher than what is explicitly authorized by the Policy and Class Policies.

40. By failing to determine cost of insurance rates based on its expectations as to future mortality experience and by taking non-mortality factors into account in determining cost of insurance rates, Defendant repeatedly breaches the Policy and Class Policies by impermissibly inflating those rates such that they exceed Defendant's "expectations as to future mortality experience."

41. The higher cost of insurance rates used by Defendant cause the monthly cost of insurance charge to be greater than what is explicitly authorized by the Policy and Class Policies. Consequently, Defendant withdraws from the accumulated value amounts for the cost of insurance that are greater than those authorized under the Policy and Class Policies.

42. Each of Defendant's past and future cost of insurance deductions from the accumulated values of Plaintiff and the class constitutes separate breaches of contract.

43. As a direct and proximate result of Defendant's breaches, Plaintiff and the class have been damaged, and those damages are continuing in nature in that Defendant has deducted and will continue to deduct cost of insurance charges from the accumulated values of policy owners in unauthorized amounts.

44. By loading cost of insurance rates with unlisted expense factors, Defendant repeatedly breaches the Policy and Class Policies by impermissibly deducting amounts from the accumulated values of Plaintiff and the class in excess of the expense charge amounts expressly authorized by the Policy and Class Policies.

45. Defendant's inclusion of unlisted expense loads in the cost of insurance rates is not authorized under the expense provisions of the Policy. Indeed, Defendant charged policy

owners the expense amounts authorized under the Policy's and Class Policies' expense provisions, and therefore, did not have authorization to deduct additional expenses through cost of insurance charges.

46. Each of Defendant's deductions for expenses in excess of the maximum expense charge amounts constitutes separate breaches of contract.

47. As a direct and proximate result of Defendant's breaches, therefore, Plaintiff and the class have been damaged and those damages are continuing in nature in that Defendant has deducted and will continue to deduct expenses from the accumulated values of Plaintiff and the class in amounts not authorized by the Policy and Class Policies.

48. In an identical case involving Missouri owners of these same policies in *Karr v. Kansas City Life Insurance Co.*, 1916-CV26645 (Circuit Court of Jackson County, Mo.), partial summary judgment was granted in favor of plaintiff and the Missouri class on Defendant's liability for the same conduct on the same policy forms as alleged here. See attached as Exhibit B hereto the order granting the plaintiff's motion for partial summary judgment and denying defendant's motion for summary judgment in *Karr* (finding, in part, the relevant policy language *unambiguous in the plaintiff's favor* and further finding Defendant had admitted to the alleged wrongful conduct in breach of the policies such that liability was established and the case would proceed to a damages-only trial).

49. The nature of Defendant's continuing conduct is such that Plaintiff and each member of the class would be unaware that Defendant was engaging in wrongdoing by taking inflated charges and improper amounts from accumulated values. Defendant possesses the actuarial information and equations underlying the computation of rates and charges for the Policy. The cost of insurance rates used to calculate cost of insurance charges are not disclosed

to policy owners, nor are the components or factors used to determine those rates. And, even if they were, Plaintiff and the members of the class would lack the knowledge, experience, or training to reasonably ascertain how Defendant calculated the rates and charges included in the Policy.

50. Plaintiff did not discover, nor could he have discovered through reasonable diligence, the facts establishing Defendant's breaches or conversions or the harm caused thereby. Plaintiff proceeded diligently to file suit once he discovered the need to proceed.

51. Defendant drafted the Class Policies and was aware the Class Policies contained a promise that the cost of insurance rates will be "based on [Defendant's] expectations as to future mortality experience" and certain other mortality-related factors, such as age, sex, risk class, and policy duration. Defendant was aware that it was required to comply with its contractual provisions, which is confirmed by various documents, including documents relating to its "Determination Procedures."

52. Defendant understood that its cost of insurance rates must be based on its expectations as to future mortality experience rather than other pricing assumptions and factors, such as investment margins, as is evidenced in documentation from Defendant's actuaries, including, specifically, correspondence from Defendant's actuary, Matthew Dolliver—relying on conversations with Dave Metzler—explicitly confirming that understanding in email. Defendant is aware that it does not determine its cost of insurance rates based on its expectations as to future mortality experience, regardless as to whether "expectations as to future mortality experience" refers to projected death claims (as Defendant contends) or to assumed mortality rates (as Plaintiff contends). Defendant is further aware that its cost of insurance rates exceed its expectations as to future mortality experience. And Defendant is aware that it deducted the cost of insurance every

month using the cost of insurance rates that it inflated with non-mortality assumptions and factors. The cost of insurance rates and mortality expectations have been identified by Defendant.

53. Defendant is further aware that higher policy charges lead to lower accumulated values for policyholders, which in turn, increases the likelihood that a policyholder's policy will lapse absent increased premium payments.

54. In addition to the Class Policies themselves, Defendant referred to the cost of insurance charges as "mortality charges" in marketing materials and illustrations despite its knowledge that it was passing on undisclosed non-mortality expenses and assumptions through the cost of insurance charges.

55. Defendant explicitly marketed the Class Policies as permanent products that "simply cannot become obsolete in your lifetime" with "low cost protection based on current mortality expectations." Defendant made similar representations to regulators; for instance, in 1986 Defendant told a regulator: "A repricing of this product would occur whenever our expectations as to future mortality experience would suggest that our current premiums are either inadequate or too high." Yet Defendant has not revised its rates for any product since 1987—more than 35 years ago.

56. In 1997, one state regulator explicitly requested that Defendant "[d]elete all factors such as persistency, interest, expenses, etc. from the Cost of Insurance provision, other than mortality cost. The Department will not allow these factors in the determination of the cost of insurance." Nevertheless, Defendant responded to that regulator by misleadingly suggesting that it was complying with that requirement.

57. Moreover, since at the latest 2008, Defendant has changed the wording in all policies it sells to eliminate the promise that cost of insurance rates "will be determined by us

based on our expectations as to future mortality experience," which establishes that Defendant was aware that this phrase limited its authority to set cost of insurance rates under the policies, as reflected in the policy language for the SuperNova, FlexWeath, and Life Protector products. In fact, this revision occurred for certain products by 2000, as seen with the Nova and Nova II products.

58. Since 2012 at the latest, Defendant's Senior Vice President and Chief Actuary, Mark Milton, has repeatedly inquired about which policies had the more permissive cost of insurance rates language. And Dave Metzler, Marc Bensing, Lendy Kessler, Jill Daniel, and Lynn Robinson have been involved in similar conversations.

59. Likewise, in early 2017 at the latest, Mark Milton attended the ReFocus Conference at which cost of insurance litigation was a major topic of discussion. In early 2017, Defendant undertook a project comparing its pricing assumptions (a set of expected mortality rates) for the relevant products to the recent mortality experience.

60. Defendant also understood that the Class Policies were too complex for policyholders to fully understand how policy values are calculated. For instance, in one letter to regulators Defendant stated: "It goes without saying that the complexity of this product simply will not allow the reproduction of cash values by a policyowner without every item of detail regarding interest, expense charges, current cost of insurance rates, etc. This is a 'computer-age' product which is not 'cut and dried,' and demands an element of trust from our policyholder. . . . [I]t is our opinion that the mathematics of this product are actually too sophisticated for most buyers to comprehend . . . ."

61. In June 2018, a Missouri jury returned a verdict under Missouri law in favor of a class of policyholders alleging nearly identical claims relating to inflated cost of insurance

charges against State Farm Life Insurance Company, finding that the insurer had breached its policies and converted policyholder property by deducting unauthorized charges. In June 2020, the Eighth Circuit Court of Appeals affirmed the jury's verdict. Counsel for Defendant attended the oral argument before the panel of the Eighth Circuit in November 2019, suggesting that Defendant was aware of the jury verdict prior to such time. Despite its awareness of these rulings applied to nearly identical conduct, Defendant has not changed its practice of deducting unauthorized amounts from policyholders' accumulated values.[2]

## CLASS ACTION ALLEGATIONS

62. Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), 23(b)(3) and/or 23(c)(4), Plaintiff brings this action on behalf of himself and all others similarly situated, and seeks to represent the following class:

> All persons who own or owned a Better Life Plan, Better Life Plan Qualified, LifeTrack, AGP, MGP, PGP, Chapter One, Classic, Rightrack (89), Performer (88), Performer (91), Prime Performer, Competitor (88), Competitor (91), Executive (88), Executive (91), Protector 50, LewerMax, Ultra 20 (93), Competitor II, Executive II, Performer II, Ultra 20 (96), Century II VUL, Alliance VUL, or Accumulator VUL life insurance policy issued in Maryland, that was issued or administered by Defendant, or its predecessors in interest.

63. Excluded from the class is Defendant, any entity in which Defendant has a controlling interest, any of the officers, directors, employees, or sales agents of the Defendant, the legal representatives, heirs, successors, and assigns of the Defendant, anyone employed with

---

[2] Discovery, including punitive damages discovery, has not yet commenced in this case. *See* Dkt. 48 ("It is significant that discovery has not yet begun.") (citing *Brathwaite v. Helm*, GLS-22-1457, 2023 WL 185176 at *1 (D. Md. Jan. 12, 2023); *Class Produce Grp., LLC v. Harleysville Worcester Ins. Co.*, ELH 16-3431, 2017 WL 2377105 at *9 (citing *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006))). Furthermore, although the plaintiff in *Fine v. Kansas City Life Insurance Co.*, No. 2:22-cv-02071-SSS-PD (C.D. Cal.) served punitive damages discovery in that matter on June 17, 2022, the defendant has not yet provided substantive responses.

Plaintiff's counsels' firms, any Judge to whom this case is assigned, and his or her immediate family.

64. Plaintiff's claims satisfy the numerosity, typicality, adequacy, commonality and superiority requirements under Federal Rule of Civil Procedure 23, as set forth more fully herein.

65. The persons who fall within the class number in at least the hundreds and most likely thousands, and thus the numerosity standard is satisfied. Because class members are geographically dispersed across the country, joinder of all class members in a single action is impracticable.

66. Class members are readily ascertainable from information and records in Defendant's possession, custody, or control. Notice of this action can readily be provided to the class.

67. There are questions of law and fact common to the claims of Plaintiff and the class that predominate over any questions affecting only individual class members. The questions of law and fact arising from Defendant's actions that are common to the class include, without limitation:

(a) Whether Defendant is permitted by the Policy and Class Policies to consider unlisted non-mortality factors into account in determining monthly cost of insurance rates used to calculate cost of insurance charges;

(b) Whether Defendant considers unlisted non-mortality factors in determining monthly cost of insurance rates used to calculate cost of insurance charges;

(c) Whether Defendant is permitted by the Class Policies to charge expense amounts to policy owners in excess of the amounts disclosed in the Class Policies;

(d) Whether Defendant charged expense amounts to policy owners in excess of the amounts disclosed in the Class Policies;

(e) Whether Defendant breached the terms of the Class Policies or converted class members' property;

(f) Whether the class sustained damages as a result of Defendant's breaches of contract and conversions;

(g) Whether the class is entitled to damages, restitution, and/or other equitable relief; and

(h) Whether the class, or a subset of the class, is entitled to declaratory relief stating the proper construction and/or interpretation of the Class Policies.

68. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the claims asserted herein.

69. Plaintiff's claims are typical of the claims of the class in that Plaintiff and the class members all purchased policies containing the same or similar limitations on the amounts that Defendant could charge its policyholders under the express terms of the Policy and Class Policies.

70. Plaintiff will fairly and adequately protect and represent the interests of the proposed class, because his interests are aligned with, and not antagonistic to, those of the

proposed class, and he is represented by counsel who are experienced and competent in the prosecution of class action litigation and have particular expertise with class action litigation on behalf of owners of universal and variable universal life insurance policies.

71. Maintenance of this action as a class action is a fair and efficient method for adjudicating this controversy. It would be impracticable and undesirable for each member of the class to bring a separate action. Because of the relatively small size of individual class members' claims, absent a class action, most class members would likely find the cost of litigating their claims prohibitively high and would have no effective remedy. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

## COUNT I: BREACH OF CONTRACT

### (Cost of Insurance Charge)

72. The preceding paragraphs are incorporated by reference as if fully alleged herein.

73. Plaintiff and the class purchased life insurance policies—the Policy and Class Policies—from Defendant.

74. The Policy and Class Policies are valid and enforceable contracts between the Defendant and Plaintiff and class members.

75. Plaintiff and the class substantially performed their obligations under the terms of the Policy and Class Policies.

76. Defendant considers and uses unauthorized and unlisted non-mortality factors to determine its monthly cost of insurance rates.

77. Defendant does not determine cost of insurance rates based on its expectations as to future mortality experience.

78. Defendant impermissibly causes cost of insurance rates to be higher for the Policy and the Class Policies.

79. Because Defendant calculates cost of insurance charges using monthly cost of insurance rates that are higher than those authorized by the Policy and Class Policies, Defendant has deducted and will deduct cost of insurance charges from the accumulated values of Plaintiff and the class in amounts greater than authorized by their policies.

80. Defendant's practice of deducting charges in amounts not authorized by the Policy and Class Policies results in repeated breaches of the policies.

81. As a direct and proximate result of Defendant's breaches, Plaintiff and the class have sustained damages that are continuing in nature in an amount to be determined at trial.

## COUNT II: BREACH OF CONTRACT

**(Expense Charges)**

82. The preceding paragraphs are incorporated by reference as if fully alleged herein.

83. By loading monthly cost of insurance rates with unlisted expense factors, Defendant impermissibly deducts expense charges from the accumulated values of Plaintiff and the class in amounts in excess of the maximum expense charges expressly authorized by their policies.

84. By deducting unauthorized expense charges from the accumulated values of Plaintiff and the class, Defendant has breached and continues to breach the Policy and Class Policies.

85. As a direct and proximate result of Defendant's breaches, Plaintiff and the class have sustained damages that are continuing in nature in an amount to be determined at trial.

**COUNT III: BREACH OF CONTRACT**

**(Improving Expectations as to Future Mortality Experience)**

86. The preceding paragraphs are incorporated by reference as if fully alleged herein.

87. The Policy and Class Policies require Defendant to determine cost of insurance rates based on its expectations as to future mortality experience.

88. Although its mortality expectations have generally improved because people are living longer today than when the Policy and Class Policies were initially priced, Defendant has failed to reduce monthly cost of insurance rates for the Policy and Class Policies to reflect those improved mortality expectations.

89. Defendant's failure to reduce these rates even though its expectations of future mortality experience improved constitutes breaches of the Policy and Class Policies.

90. As a direct and proximate result of Defendant's breaches, Plaintiff and the class have sustained damages that are continuing in nature in an amount to be determined at trial.

**COUNT IV: CONVERSION**

91. The preceding paragraphs are incorporated by reference as if fully alleged herein.

92. Plaintiff and the class had a property interest in the funds Defendant deducted from their accumulated values in excess of the amounts permitted by the terms of the Policy and Class Policies.

93. By deducting cost of insurance charges and expense charges in unauthorized amounts from the accumulated values of Plaintiff and the class, Defendant assumed and exercised ownership over, and misappropriated or misapplied, specific funds held in trust for the benefit of

Plaintiff and the class, without authorization or consent and in hostility to the rights of Plaintiff and class members.

94. Defendant continues to retain these funds unlawfully without Plaintiff and class members' consent.

95. Defendant's wrongful exercise of control over the personal property of Plaintiff and class members constitutes conversion.

96. As a direct and proximate result of Defendant's conduct, Plaintiff and the class have been damaged, and these damages are continuing in nature.

97. Although requiring expert testimony, the amounts of unauthorized cost of insurance charges and expense charges Defendant took from Plaintiff and the class are capable of determination, to an identified sum, by comparing Plaintiff's actual cost of insurance charge each month to a cost of insurance charge computed using a monthly cost of insurance rate determined based on Defendant's expectations as to future mortality experience.

98. On behalf of himself and the class, Plaintiff seeks all damages and consequential damages proximately caused by Defendant's conduct.

99. Defendant intended to cause damage to Plaintiff and the class by deducting more from their accumulated value than was authorized by the Policy and Class Policies. Defendant's conduct was, therefore, malicious and Defendant is also guilty of oppression in that its systematic acts of conversion subject Plaintiff and the class to cruel and unjust hardship in conscious disregard of their rights. Plaintiff and the class are therefore entitled to punitive or exemplary damages.


Case 4:25-cv-00640-BP Document 52 Filed 04/04/23 Page 21 of 25

## <u>COUNT V: DECLARATORY AND INJUNCTIVE RELIEF</u>[3]

100. The preceding paragraphs are incorporated by reference as if fully alleged herein.

101. An actual controversy has arisen and now exists between Plaintiff and the class, on the one hand, and Defendant, on the other, concerning the respective rights and duties of the parties under the Policy and Class Policies.

102. Plaintiff contends that Defendant has breached the Policy and Class Policies in the following respects:

(a) By failing to determine cost of insurance rates based on its expectations as to future mortality experience, Defendant impermissibly increased monthly cost of insurance rates for the Policy and Class Policies and, as a result, withdrew cost of insurance charges from the accumulated values of Plaintiff and the class in an amount greater than those authorized by the Policy and Class Policies.

(b) By inflating monthly cost of insurance rates with unauthorized expense factors, Defendant impermissibly deducted expenses from the accumulated values of Plaintiff and the class in amounts in excess of the maximum expense charges expressly authorized by the Policy and Class Policies.

(c) By failing to reduce cost of insurance rates to reflect Defendant's improving expectations as to future mortality experience.

---

[3] Plaintiff recognizes the Court dismissed Count V (*see* Dkt. 48) and only repleads Count V for appellate preservation purposes.

103. Plaintiff therefore seeks a declaration of the parties' respective rights and duties under the Policy and Class Policies and requests the Court declare the aforementioned conduct of Defendant unlawful and in material breach of the Policy and Class Policies so that future controversies may be avoided.

104. Pursuant to a declaration of the parties' respective rights and duties under the Policy and Class Policies, Plaintiff further seeks an injunction enjoining Defendant (1) from continuing to engage in conduct in breach of the Policy and Class Policies, and from continuing to collect unlawfully inflated charges in violation of the Policy and Class Policies; and (2) ordering Defendant to comply with the terms of the Policy and Class Policies in regards to its assessment of charges against Plaintiff and class members' accumulated values.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, requests relief and judgment against Defendant as follows:

(a) That the Court enter an order certifying the class, appointing Plaintiff as a representative of the class, appointing Plaintiff's counsel as class counsel, and directing that reasonable notice of this action, as provided by Federal Rule of Civil Procedure 23(c)(2), be given to the class;

(b) For a judgment against Defendant for the causes of action alleged against it;

(c) For compensatory damages in an amount to be proven at trial;

(d) For punitive and exemplary damages;

(e) For a declaration that Defendant's conduct as alleged herein is unlawful and in material breach of the Policy and Class Policies;

(f) For appropriate injunctive relief, enjoining Defendant from continuing to engage in conduct related to the breach of the Policy and Class Policies;

(g) For pre-judgment and post-judgment interest at the maximum rate permitted by law;

(h) For Plaintiff's attorney's fees;

(i) For Plaintiff's costs incurred; and

(j) For such other relief in law or equity as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: April 4, 2023

By: */s/ Ethan M. Lange*

Patrick J. Stueve (admitted *PHV*)
stueve@stuevesiegel.com
Ethan M. Lange (admitted *PHV*)
lange@stuevesiegel.com
Lindsay Todd Perkins (admitted *PHV*)
perkins@stuevesiegel.com
David A. Hickey (admitted *PHV*)
hickey@stuevesiegel.com
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: 816-714-7100

John J. Schirger (admitted *PHV*)
jschirger@millerschirger.com
Matthew W. Lytle (admitted *PHV*)
mlytle@millerschirger.com
Joseph M. Feierabend (admitted *PHV*)
jfeierabend@millerschirger.com
**MILLER SCHIRGER, LLC**
4520 Main Street, Suite 1570
Kansas City, Missouri 64111
Tel: 816-561-6500

Veronica Nannis (#15679)
vnannis@jgllaw.com
**JOSEPH GREENWALD & LAAKE, P.A.**
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770
Tel: 301-220-2200

*Attorneys for Plaintiff*